# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT CINCINNATI

PATRICK LEONARD,

        Petitioner,

    -vs-

WARDEN, Ohio State Penitentiary,

        Respondent.

:

:

:

:

Case No. 1:09-cv-056

Chief Judge Susan J. Dlott
Magistrate Judge Michael R. Merz

---

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

---

This capital habeas corpus case is before the Court on Petitioner's Objections (Doc. No. 53) to the Magistrate Judge's Report and Recommendations (the "Report," Doc. No. 47). The Warden waived any objections to the Report, but has filed a Reply to Petitioner's Objections (Doc. No. 56). With Court permission, Petitioner has filed a Reply to the Warden's Reply (Doc. No. 58). Chief Judge Dlott has recommitted the case for reconsideration in light of the Objections (Doc. No. 54).

Leonard pled thirty Grounds for Relief in the Petition (Doc. No. 6, PageID 25-31). The Report recommends that the Petition be dismissed with prejudice but that Leonard be granted a certificate of appealability on Grounds One, Sixteen, and Twenty-Four (Report, Doc. No. 47, PageID 1286).

Leonard raises no objections as to the proposed dismissal of Grounds Four, Six, and Twenty-Eight; Ground Twenty-Nine has previously been withdrawn (Final Brief, Doc. No. 39,

PageID 947).  The remaining Grounds for Relief will be considered *seriatim[1]*.


**Ground One:  Use of a Stun Belt at Trial**


Leonard was compelled to wear a stun belt during the course of his trial.  In his First Ground for Relief, he argued this denied him a fair trial by interfering with the physical indicia of innocence (Sub-claim 1); and his right to counsel, to participate in his defense, and to have the jury consider mitigating evidence (Sub-claim Two).  The Report recommends dismissing both sub-claims on the merits after reviewing the state court decisions on this Ground for Relief under the AEDPA deferential standard in 28 U.S.C. § 2254(d)(1).


**Sub-claim One – the Due Process Claim**


Leonard's claim is that a stun belt is constitutionally no different from shackles and the Supreme Court has held that forcing a criminal defendant to wear shackles in the view of the jury is presumptively unconstitutional, relying on *Deck v. Missouri*, 544 U.S. 622 (2005).[2]  The Report also concluded that a visible stun belt is the constitutional equivalent of shackles and leg irons.  (Report, Doc. No. 47, PageID 1157, citing *Earhart v. Konteh,* 589 F.3d 337 (6th Cir. 2009.)

The claims relating to the stun belt were raised for the first time in post-conviction.  On

---

[1] At the outset of the Objections, Leonard objects to the Report's application of  *Cullen v. Pinholster,* 563 U.S. ___, 131 S.Ct. 1388 (2011), to this case (Objections, Doc. No. 53, PageID 1321). Leonard indicates this point applies particularly to his Nineteenth, Twentieth, and Twenty-First Grounds for Relief.  *Id.*  at PageID 1319.  The objection will be discussed with those Grounds for Relief as necessary.
[2] Although *Deck* was decided after the trial here, the Sixth Circuit has held that the law in *Deck* was clearly established long before that case was decided.  (Report, Doc. No. 47, PageID 1156, citing *Mendoza v. Berghuis*, 544 F.3d 560 (6th Cir. 2008).

appeal from an initial denial of this claim, the court of appeals held that the Hamilton County Common Pleas Court had not made, at trial, the required individualized finding of a need for restraints. *State v. Leonard*, 157 Ohio App. 3d 653, 670-71, 2004-Ohio-3323 at ¶¶ 50-51(Ohio App. 1st Dist. 2004). The case was remanded for an evidentiary hearing which was held before Judge Winkler; the trial had been before Judge Schweikert[3]. Judge Winkler's factual findings are recited at length in the Report (Doc. No. 47, PageID 1159-61). From the historical facts, he reached the ultimate factual conclusions that "[t]here is absolutely no evidence the jury was aware he was wearing a React[4] Belt." (Report, Doc. No. 47, at PageID 1161, quoting Findings, Apx. Vol. 13, at 316.)

In his Objections, Petitioner asserts that "During Leonard's trial, the stun belt was visible at least twice." (Doc. No. 53, PageID 1323, citing Apx. Vol. 13, p. 314.) That is a mischaracterization of what is in the record. Leonard's sister testified at post-conviction that she saw a "big, bulky thing under the back of his shirt." She only learned after trial that it was the stun belt; as Judge Winkler found, there was no indication that anyone, including Leonard's sister, could tell by looking that the object concealed by his clothing was a restraint of any kind.

The key factual question under *Deck, supra*, is whether the jury saw restraints on Leonard. The Ohio courts found they did not. To prevail in habeas, Leonard must show by clear and convincing evidence from the state court record that that finding is clearly erroneous. He relies on testimony from his sister, but the State presented evidence from many other witnesses who were at the trial and who did not see the stun belt. Significantly, no juror was called to testify about what he or she saw[5]. Instead, Leonard relies on inferences about what they must

---

[3] Judge Schewikert left the bench to become executive director of the Ohio Judicial Conference on March 1, 2006.
[4] This is the brand name of the stun belt actually used.
[5] Leonard asserts the Magistrate Judge insisted on testimony from jurors. Actually the Report comments on the absence of such testimony, noting that it would have been the most direct proof of what the jury saw.

have seen or would have seen. Finally, the Magistrate Judge reviewed the video footage which was in the record before Judge Winkler and found it did not show the stun belt (Report, Doc. No. 47, PageID 1166-67).

Leonard has not shown the factual findings of the Ohio courts were clearly erroneous or that their ultimate conclusion was an unreasonable application of *Deck*.


**Sub-claim Two – the Sixth Amendment Claim**


Leonard claims the presence of the stun belt interfered with his Sixth Amendment rights by making it difficult for him to confer with his counsel and present mitigation evidence.

On the facts of this sub-claim, Judge Winkler heard testimony from many witnesses about Leonard's courtroom demeanor and particularly his consulting with his attorneys. The Report reviewed this evidence at length and found Judge Winkler's findings were not clearly erroneous (Doc. No. 47, PageID 1171-76). Nothing in the Objections requires further analysis of this point. In particular, Judge Winkler was not bound to accept the post-hoc conclusions of Dr. Robert Smith as an expert on what effect the stun belt would have had psychologically on Leonard.

The Report also noted, "[i]n contrast to the physical indicia precedent (*Allen*, *Holbrook* and *Deck*), Leonard points to no Supreme Court precedent clearly establishing a right to be free from the psychological impact of a stun belt on the relationship with counsel or presentation of mitigation." (Doc. No. 47, PageID 1171.) Leonard objects that there is no need for a Supreme Court case with "nearly identical facts" to clearly establish the law (Objections, Doc. No. 53, PageID 1334, citing *Marshall v. Rodgers*, 133 S. Ct. 1446, 1449 (2013), for the proposition that

"a general standard" from Supreme Court cases can supply the relevant law.)

*Rodgers* is a *per curiam* reversal of the Ninth Circuit for looking to circuit precedent "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not yet announced." 133 S. Ct. 1446, 1450, citing *Parker v. Matthews*, 567 U.S. ___, ___, 132 S. Ct. 2148, 2155 (2012), a *per curiam* reversal of the Sixth Circuit for doing the same thing. The general principle on which Leonard relies for this sub-claim – the right of a criminal defendant to unrestricted access to his counsel during trial – is said to be clearly established by *Geders v. United States*, 425 U.S. 80, 88 (1976), and *Perry v. Leeke,* 488 U.S. 272, 284 (1989)(Objections, Doc. No. 53, PageID 1334). In *Geders* a trial judge's order that a defendant not consult with his attorney overnight during the trial was held to deprive Geders of his Sixth Amendment rights. In *Perry*, in contrast, the Supreme Court held there was no deprivation when a defendant was ordered not to consult with counsel during a fifteen-minute recess during Perry's own testimony.

The "general standard" of clearly established law derivable from these cases is that a judge may not order a criminal defendant not to consult with his attorney except for a brief recess in the defendant's own testimony. Nothing like an order not to consult occurred in this case. Nor do these cases stand for a principle that a defendant may not be psychologically impaired in consulting with his counsel by some condition imposed on him by the court but of which he never complains at trial.

In the last portion of Objections on Ground One, Leonard argues imposition of the stun belt cannot have been harmless error because he was actually prejudiced (Objections, Doc. No. 53, PageID 1335-39). His theory is that the evidence of his guilt was not overwhelming because the jury concluded (1) Leonard did not succeed in penetrating Flick and so was guilty only of

attempted rape and (2) Leonard did not intend to kill Gries and Minges, the men coming to Flick's assistance, when he shot at them through the door.

These are side issues. There is overwhelming evidence Leonard put three bullets in Dawn Flick's head and had expressed his intention to kill her to others beforehand, saying if he couldn't have her, no one could. Under *Brecht v. Abrahamson*, 507 U.S. 619 (1993), there is no probability that the jury was influenced by a stun belt it could not see or by Leonard's purported difficulty of consulting with counsel, about which he never complained at trial.

It is again respectfully recommended that Ground One be denied on the merits.


**Ground Two: Confrontation Rights**


In his Second Ground for Relief, Leonard asserts his rights under the Confrontation Clause and to a fair trial were violated when improper hearsay testimony was admitted against him. The Report recommends denying Ground Two on the merits as to the claims of hearsay raised on direct appeal to the Ohio Supreme Court and as procedurally defaulted as to the hearsay claims omitted on direct appeal and attempted to be raised later by an application for reopening of the direct appeal (Report, Doc. No. 47, PageID 1178-91).


**Direct Appeal Issues**


Leonard first objects that the Report does not apply harmless error analysis to those hearsay statements the Ohio Supreme Court had found should not have been admitted (Objections, Doc. No. 53, PageID 1341-43). It is correct that the Report concluded that "the

Ohio Supreme Court's decision on the hearsay questions presented on direct appeal is not an objectively unreasonable application of Supreme Court law" without mentioning harmless error analysis. To cure that omission, the Magistrate Judge offers the following analysis:

The testimony the Ohio Supreme Court found to be inadmissible hearsay was:

1.    Sabrina Frye's testimony regarding Flick's statement as to why she intended to end the relationship with Leonard. *State v. Leonard*, 104 Ohio St. 3d 54, ¶ 101 (2004). The Ohio Supreme Court found admission of this hearsay harmless error because "Leonard stipulated at trial that he had fathered two children by McBride. In his confession, he stated that he had believed that his relationship with Flick was ending and that he had shot Flick because she had broken his heart." *Id.* at ¶ 102.

2.    Frye's testimony that Flick had told her that Leonard had said that if he could not have her, no one else could; and that if he ever saw Flick with another man, Leonard would kill him. *Id.* at ¶ 103. The Ohio Supreme Court found the admission harmless error because

> Leonard had told Alvie Woods the same thing directly that he had
> allegedly told Flick, and during Woods's testimony, the trial court
> properly admitted the statement under Evid.R. 801(D)(2)(a) (a
> statement is not hearsay if it is offered against a party and is the
> party's own statement). Therefore, this evidence was cumulative.

*Id.* at ¶ 105.

3.    Frye's "testimony regarding Flick's statement explaining why she had permitted Leonard to stay at her house the night before the murder. . ." *Id.* at ¶ 106. The Ohio Supreme Court found admission of this testimony was harmless error because "Leonard confessed to the murder, . . ."

*Id.* at ¶ 108.

As the Report notes, although the Confrontation Clause claim was presented to the Ohio Supreme Court along with the hearsay claims under Ohio law, the Ohio Supreme Court did not "expressly address the Confrontation Clause question." Because it was presented, the Report concluded this Court is obliged to deem it to have been decided on its merits and review the decision under 28 U.S.C. § 2254(d)(1) (Report, Doc. No. 47, PageID 1185, citing *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770 (2011)).

The Objections cite no United States Supreme Court precedent for the proposition that the testimony found admissible by the Ohio Supreme Court over Leonard's hearsay objection should in fact have been excluded under the Confrontation Clause[6]. Nor do they object to the Report's conclusion that the excited utterance and statement of a party opponent exceptions to the hearsay rule are "firmly rooted" and therefore satisfy the Confrontation Clause. Because there was no constitutional error in admitting Frye's testimony, this Court need not reach the question whether its admission was prejudicial.

The prior three paragraphs address the asserted prejudicial effect of admitted testimony which the Ohio Supreme Court found should have been excluded. In his Objections, Leonard makes no argument about the testimony the Ohio Supreme Court held was admissible despite a hearsay objection, so no further analysis is needed on those pieces of testimony.

**Reopening of Direct Appeals Issues**

In his Application for Reopening to the Ohio Supreme Court, Leonard claimed his appellate attorney provided ineffective assistance in failing to plead assignments of error relating

---

[6] Note that the Ohio Supreme Court decision here precedes *Crawford v. Washington,* 541 U.S. 36,53-54 (2004). Crawford does not apply retroactively. *Whorton v. Bockting*, 549 U. S. 406 (2007). The governing United States Supreme Court precedent which governs here is *Ohio v. Roberts*, 448 U.S. 56 (1980).

to the testimony of Alvie Woods, Penny McBride, Deborah Schroeder, and Lea Ketter about statements Leonard made to them (Apx. Vol. 5, at pp. 141-42). The Ohio Supreme Court denied reopening without opinion, so the claim of ineffective assistance of appellate counsel "is preserved for this Court to consider as a basis for finding cause and prejudice to excuse omission of those claims on direct appeal." *State v. Leonard*, 106 Ohio St. 3d 1407 (2005).

Having recited the ineffective assistance of appellate counsel standard, the Report found the claim unpersuasive because all of the statements in question were made by Leonard and therefore were admissible as the non-hearsay statements of a party opponent. (Report, Doc. No. 47, PageID 1190-91.)

The Objections correctly note that the Report does not address the testimony of Lea Ketter.[7] They refer to Ketterer's testimony at Trial Transcript p. 1212 which was that, on the night of July 28, 2000, Leonard called Flick at the place where Flick and Ketterer worked four times. She was asked to describe Flick's reaction and stated "She got agitated. She was working. We were busy. She's like 'I don't have time'." *Id.* Mr. Welsh objected as to what Flick said and the objection was sustained. Leonard now says the trial judge failed to instruct the jury to disregard the inadmissible portion of the testimony (Objections, Doc. No. 53, PageID 1344). There was indeed no instruction, but omission of this claim on direct appeal did not constitute ineffective assistance of appellate counsel because

(1)     Welsh made no request for an instruction as required by Ohio's contemporaneous objection rule and thus the claim would have been barred;

(2)     It is unclear if any of Ketterer's testimony at this point constitutes a repetition of what Flick said and whether instead it is merely a description of her emotional reaction to the

---

[7] Thus spelled in the Application for Reopening, but as "Ketterer" in the Objections (Doc. No. 53, PageID 1343 and 1344.) She spelled her name "Ketterer" when she took the witness stand (Trial Tr. at 1210).

calls; and

(3) This is not so strong an argument that its omission was deficient performance. See *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983).

The Objections assert the Report misses the point of Leonard's objection to Schroeder's testimony. It is about "what Flick said when Leonard called (see Tr. 1179)" (Objections, Doc. No. 53, PageID 1344). Actually, the question asked by the prosecutor was, "And what would Dawn **do** [not say] when he called repeatedly?" (Trial Tr. at p. 1179.) The trial court then overruled an unexplained[8] objection and Schroeder answered, "She would – she would answer the phone and tell him that I am – she was busy. She had to get back to work. And she was – you could tell she was a little nervous, a little upset." *Id.*

A hearsay objection to this testimony should have been overruled, as it was. The testimony was not offered to prove the truth of the content of what Flick said ("I am busy"; "I have to get back to work"), but to show that Flick made the statements to Leonard under these circumstances, i.e., that it was her verbal act. Testimony about verbal acts made to show they occurred and not offered for the truth of the content are not hearsay. See, e.g., *United States v. Rodriguez-Lopez,* 565 F.3d 312, 314-315 (6th Cir. 2009) (phone calls made to a drug dealer's cell phone by individuals "requesting heroin" while the dealer was being detained by police were improperly excluded as hearsay because "the government [did] not offer them for their truth. Indeed, if the statements were questions or commands, they could not--absent some indication that the statements were actually code for something else--be offered for their truth because they would not be assertive speech at all. They would not assert a proposition that could be true or false."). Moreover, the initial question – to which Welsh made the objection -- was not framed to elicit hearsay; the prosecutor did not ask what Flick said but what she did. After Schroeder

_____
[8] Leonard's habeas counsel assume the objection was hearsay, but Welsh did not say so.

testified in part that Flick said things, no objection was renewed. Therefore an assignment of error relating to this testimony by Schroeder would have been unavailing.

Because Leonard has not proven ineffective assistance of appellate counsel, he has not shown cause to excuse his omission of these particular hearsay objections on direct appeal.

It is therefore again respectfully recommended that the Second Ground for Relief be dismissed with prejudice.

**Ground Three: Admission of Allegedly Involuntary Confession**

In his Third Ground for Relief, Leonard asserts his Fifth and Fourteenth Amendment rights were violated when his confession was admitted against him. The Ohio Supreme Court denied this claim on direct appeal. *State v. Leonard*, 104 Ohio St. 3d 54, ¶¶ 31-37 (2004). The Report concluded the Ohio Supreme Court's decision was neither an unreasonable application of Supreme Court law nor based on an unreasonable determination of the facts in light of the state court evidence. (Doc. No. 47, PageID 1195-96.)

Having reconsidered the Report in light of the Objections, the Magistrate Judge concludes no further analysis is needed and again respectfully recommends this Ground for Relief be dismissed with prejudice.

**Ground Four:        [No objections made to dismissal.]**

**Ground Five: Admission of Gruesome Photographs**

The Report recommends dismissing this Ground for Relief with prejudice on the basis of AEDPA deference[9] to the Ohio Supreme Court's decision of the claim. The Report particularly noted that Leonard's "entire argument is made in one sentence and presents no analysis whatsoever." (Report, Doc. No. 53, PageID 1203, citing Traverse, Doc No. 17, PageID 391.) Now, however, in his Objections, Leonard provides four pages of argument (Objections, Doc. No. 53, PageID 1349-52.) This argument, made for the first time in Objections to a Report and Recommendations on the merits, is untimely, but will be analyzed here for the sake of completeness.

Leonard argues first that the Ohio Supreme Court erred in determining the probative value of the photographs outweighed their prejudicial effect. (Objections, Doc. No. 53, PageID 1350-51, relying on Ohio R. Evid. 403.) The Ohio Supreme Court carefully described each photograph to which objection was made and noted that they were not duplicative. *State v. Leonard*, 104 Ohio St. 3d 54, ¶¶ 84-88 (2004). Of course, the question whether the probative value of these photographs outweighs their prejudicial effect is a question of Ohio, not federal, law, on which we are bound by the state court's decision. *Railey v. Webb*, 540 F.3d 393 (6th Cir. 2008), *quoting Bradshaw v. Richey,* 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *Maldonado v. Wilson*, 416 F.3d 470 (6th Cir. 2005); *Vroman v. Brigano*, 346 F.3d 598 (6th Cir. 2003); *Caldwell v. Russell*, 181 F.3d 731, 735-36 (6th Cir. 1999); *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir.

---

[9] The phrase "AEDPA deference" is shorthand, frequently used by the Sixth Circuit, for concluding under 28 U.S.C. § 2254(d)(1) that a state court decision is neither contrary to nor an objectively unreasonable application of clearly established law as found in holdings of the United States Supreme Court.

1986).

As the relevant Supreme Court law allegedly applied unreasonably, Leonard cites *Romano v. Oklahoma,* 512 U.S. 1 (1994). In that capital case the Supreme Court allowed admission of evidence that the defendant had been convicted of capital murder of another victim. The case does not speak to the question the Ohio Supreme Court was called upon to decide here.

Leonard's assertion that the Ohio Supreme Court made an unreasonable determination in light of the evidence (Objections, Doc. No. 53, PageID 1352), is purely conclusory and contrasts markedly with the detailed analysis offered by that Court.

It is therefore again respectfully recommended that the Fifth Ground for Relief be dismissed with prejudice.

**Ground Six: [No objections made to dismissal.]**

**Ground Seven: Erroneous Guilt Phase Jury Instructions**

Leonard's Seventh Ground for Relief asserts the trial court "made numerous errors" in its guilt phase instructions. The Ohio Supreme Court decided this claim on the merits. *State v. Leonard,* 104 Ohio St. 3d 54, 76-77, ¶¶ 115-121 (2004). The Report concludes this Ground for Relief is without merit, in part because the questions raised in the Ohio Supreme Court were purely ones of state law and in part because the instructions to which constitutional objection was made were in fact constitutional (Report, Doc. No. 53, PageID 1207-09).

Nothing raised in the Objections on this Ground for Relief requires further analysis.

**Ground Eight: Erroneous Penalty Phase Jury Instructions**

In his Eighth Ground for Relief, Leonard asserts constitutional error in the penalty phase jury instructions in three sub-claims.

**Sub-claim A**

In Sub-claim A, Leonard asserts constitutional error in Judge Schweikert's leaving to the jury the determination of relevance of the evidence with respect to sentencing considerations. The Report concluded this sub-claim was procedurally defaulted by failing to present it on direct appeal and the default was not excused by a showing of ineffective assistance of appellate counsel (Doc. No. 47, PageID 1212-15).

In the Objections, Leonard claims the "Magistrate Judge applied AEDPA deference to the issue of whether ineffective assistance of appellate counsel established cause to excuse the default." (Objections, Doc. No. 53, PageID 1356-57.) Leonard objects, asserting

> "Although [the petitioner] must satisfy the AEDPA standard with respect to his independent IAC claim, he need not do so to claim ineffective assistance for the purpose of establishing cause." *Joseph v. Coyle*, 469 F.3d 441, 459 (6th Cir. 2006); see also *Goldberg v. Maloney*, 692 F.3d 534, 537 (6th Cir. 2012); *Hall v. Vasbinder*, 563 F.3d 222, 236-37 (6th Cir. 2009). The Magistrate Judge, therefore, should not have applied AEDPA deference but should have instead evaluated ineffective assistance of appellate counsel under the *de novo* standard of review.

*Id.* at PageID 1357. Although *Joseph v. Coyle, supra,* does contain the quoted language, it is difficult to reconcile with *Harrington v. Richter,* 562 U.S. ___, 131 S.Ct. 770, 785 (2011), which requires habeas courts to give AEDPA deference to state court decisions on the merits and count

as merit decisions even silent state court decisions when the federal constitutional question is squarely presented to them, as Leonard's ineffective assistance of appellate counsel claim was here.

Whether the standard of review is with AEDPA deference or de novo, Leonard made no demonstration of ineffective assistance of appellate counsel when this claim was previously before the Court. The only argument he then made was "counsel failed to raise or properly litigate critical federal constitutional issues that were apparent from the record, that should have been evident to a competent appellate attorney, and for which there existed no reasonable strategic reason to not raise these issues." (Report, Doc. No. 47, PageID 1213, quoting Traverse, Doc. No. 17, PageID 406.) Now, more than three years after filing his Final Brief on Merits (Doc. No. 39), he finally makes an argument on the merits of this claim, citing Ohio case law which he says prohibits the use of the instruction given (Objections, Doc. No. 53, PageID 1356, citing *State v. Getsy*, 84 Ohio St. 3d 180 (1998), and *State v. Hale*, 119 Ohio St. 3d 118 (2008).

Getsy objected to the admission at the penalty phase of all the evidence from the trial phase and also to the instruction that the jury was to consider "all the evidence, including exhibits presented in the first phase of this trial *which you deem to be relevant*." *Getsy, supra*, at 201. The Ohio Supreme Court held that the trial judge, not the jury, had to make a relevance determination as to evidence carried over from the trial phase. *Id.* Hale complained that his jury was instructed to consider "only that evidence admitted in the trial phase that is relevant to the aggravating circumstances and to any of the mitigating factors." *Hale* at ¶ 138, quoting the trial court record. The Ohio Supreme Court held the instruction was improper under *Getsy*, noting that the trial judge had to decide what trial phase evidence was relevant to the penalty phase. *Id.*

Neither of these cases controls here. In both, the trial court judge admitted at the penalty

phase all the evidence that had been admitted at the trial phase and then left it to the jury to decide what was relevant. In this case Leonard provides no record reference to show that Judge Schweikert committed the error of readmitting all the trial phase evidence and then allowing the jury to decide what was relevant. Nor has he shown that there was any objection by trial counsel to the instruction, in the absence of which there would have been no ground for appeal. Finally, Leonard has failed to demonstrate that this particular argument would have been stronger than the other arguments presented on appeal. Thus there is no demonstration of ineffective assistance of appellate counsel in omitting this claim and therefore no proven excuse for the procedural default.

**Sub-claim B**

In Sub-claim B Leonard claims the reasonable doubt instruction in the penalty phase of trial deprived him of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments. Essentially conceding that the instruction followed Ohio law as set forth in Ohio Revised Code § 2901.05(D), Leonard claims the trial judge should have "overrule[d] Ohio's statutory definition of reasonable doubt." (Traverse, Doc. No 17, PageID 408.) In the Traverse, Leonard relies on *In re Winship*, 397 U.S. 358, 369 (1970), and *Holland v. United States*, 348 U.S. 121, 140 (1954). *Id.* at PageID 409.

This is the same claim made in his Fifteenth Proposition of Law on direct appeal. The Ohio Supreme Court decided this claim summarily, finding the instruction consistent with that recommended in *State v. Goff*, 82 Ohio St. 3d 123 (1998). *State v. Leonard, supra*, ¶ 131. The Report noted that the Sixth Circuit had approved Ohio's reasonable doubt instruction and

Leonard had pointed to no United States Supreme Court law "to the contrary or requiring different language in a reasonable doubt instruction at the penalty phase of a capital trial." (Report, Doc. No. 47, PageID 1211, referring to *Thomas v. Arn,* 704 F.2d 865 (6th Cir. 1983), *Buell v. Mitchell,* 274 F.3d 337 (6th Cir. 2001); *Byrd v. Collins,* 209 F.3d 486 (6th Cir. 2000); and *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000).[10]  The Report recommends dismissing Sub-claim B because the Ohio Supreme Court's decision is neither contrary to nor an unreasonable application of United States Supreme Court precedent.

In the Objections, Leonard complains that the "Magistrate Judge's analysis of the case law is incomplete."  (Objections, Doc. No. 53, PageID 1359.)  Be that as it may, Leonard cites no Sixth Circuit and no Supreme Court decision finding the Ohio reasonable doubt instruction unconstitutional.  Nor does Leonard make any argument as to how the language used here supposedly reduces the burden of proof.  Sub-claim B is without merit because of AEDPA deference and Leonard makes no argument here which might commend itself to the Supreme Court if certiorari were granted in this case.

**Sub-claim C**

In Sub-claim C, Leonard complains of various other asserted deficiencies in the penalty phase jury instructions.  The Report concludes that this Sub-claim is without merit as to all the asserted deficiencies (Doc. No. 47, PageID 1212).  Leonard raises only one objection to this part of the Report, to wit, that "the Magistrate Judge failed to address Leonard's challenge to the jury instructions that the jury's sentencing determination is a 'recommendation' not binding on the

---

[10] The Objections correctly criticizes the Report's citation to *Zuern v. Tate*, 336 F.3d 478 (2003), as affirming Judge Rice's approval of this instruction.  Counsel correctly point out that this part of Judge Rice's decision was not appealed.

court." (Objections, Doc. No. 53, PageID 1360.)

The Report noted that the Sixth Circuit had decided this question against Leonard's position (Report, Doc. No, 47, PageID 1211-12, citing *Buell v. Mitchell*, 274 F.3d 337, 356 (6th Cir. 2001)). Leonard concedes that *Buell* has not been overruled, but contends it "contravenes" *In re Winship,* 397 U.S. 358, 369 (1970), and *Caldwell v. Mississippi,* 472 U.S. 320, 328-29 (1985)(Objections, Doc. No. 53, PageID 1361). Leonard makes no argument about how *Buell* contravenes these cases, he merely asserts that it is so. *Winship* stands for the proposition that every element of a criminal offense must, as a matter of federal constitutional law, be proved by evidence beyond a reasonable doubt. *Winship* was a juvenile delinquency case and there is no comment at all about jury instructions or recommendations.

In *Caldwell* the Supreme Court overturned a capital conviction where the prosecutor suggested to the jury that the appellate courts would make the ultimate decision on capital punishment. In determining whether a state court decision is contrary to or an unreasonable application of clearly established Supreme Court precedent, a federal court may look only to the holdings, as opposed to the dicta, of the Supreme Court's decisions. *Goodell v. Williams*, 643 F.3d 490 (6th Cir. 2011), citing *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003); Terry *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Whether or not *Buell* "contravenes" *Winship* or *Caldwell*, it is neither "contrary to" nor an objectively unreasonable application of the holdings in either one of those cases. Neither is the Ohio Supreme Court's decision on this sub-claim, which should therefore be dismissed with prejudice.

**Ground Nine:  Duplicitous Indictment**


In his Ninth Ground for Relief, Leonard argues he was denied a fair trial and deprived of his right to a unanimous verdict by being tried on a duplicitous indictment (Traverse, Doc. No. 17, PageID 421).  Leonard has now withdrawn his Ninth Ground for Relief (Objections, Doc. No. 53, PageID 1362).  Since the withdrawal was not consented to by Respondent, the Court treats the withdrawal as a dismissal of this claim with prejudice.  See Fed. R. Civ. P. 41.


**Ground Ten:  Limitations on the Conduct of Voir Dire**

In his Tenth Ground for Relief, Leonard claims he was denied a fair trial when Judge Schweikert limited his ability to conduct voir dire. (Traverse, Doc. No. 17, PageID 430.)  The Report recommends dismissing this claim with prejudice because the Ohio Supreme Court's rejection of the claim is neither contrary to nor an objectively unreasonable application of clearly established United State Supreme Court holdings.  (Report, Doc. No. 47, PageID 1219.)

Instead of citing any applicable Supreme Court precedent, Leonard cites to two law review articles which appear to have as their audience either trial practitioners or trial judges, recommending best practices.  Leonard also cites the concurring opinion of Judge Clark in *Berryhill v. Zant,* 858 F.2d 633, 640-42 (11th Cir. 1988).  While Judge Clark strongly recommended individualized sequestered voir dire on retrial of the habeas petitioner in that case, he recognized that "[n]o court has held that an individualized segregated voir dire is constitutionally required." *Id.* at 643.  And, of course, *Berryhill* was handed down before adoption of the AEDPA in 1995 which limited the controlling case law.

It is therefore again respectfully recommended that Ground Ten be dismissed with

prejudice.

**Ground Eleven:  Failure to Excuse Prospective Jurors for Cause**

In his Eleventh Ground for Relief, Leonard asserts his constitutional rights were violated when Judge Schweikert failed to excuse prospective jurors whose voir dire statement indicated they could not be fair and impartial.  Leonard has now withdrawn his Fifteenth Ground for Relief (Objections, Doc. No. 53, PageID 1366).   Since the withdrawal was not consented to by Respondent, the Court treats the withdrawal as a dismissal of this claim with prejudice.  See Fed. R. Civ. P. 41.

**Ground Twelve:  Improper Excuse for Cause**

In his Twelfth Ground for Relief, Leonard complains that prospective jurors Gooding, Dignan, Ison, and Crockett were improperly excused for cause.   The Ohio Supreme Court considered this claim on the merits and overruled it.  *State v. Leonard, supra,* ¶¶ 70-75.  The Report recommends dismissing Ground Twelve with prejudice because all four of the prospective jurors in question "said either unequivocally that they could not sign a death verdict or that they did not believe they could."  (Doc. No. 47 at PageID 1222.)

Leonard objects only as to prospective jurors Gooding and Ison and argues how their answers on voir dire could have been construed so as to allow them to be seated (Objections, Doc. No. 53, PageID 1367-69).   But the question before this habeas court is not whether these prospective jurors should have been permitted to sit, but whether the Ohio Supreme Court's

upholding of their excusing is entitled to AEDPA deference. Leonard has not pointed to any United States Supreme Court precedent to which this decision is contrary or of which it is an unreasonable application. It is therefore again respectfully recommended that the Twelfth Ground for Relief be dismissed with prejudice.

**Ground Thirteen:  Improper Introduction of Police Reports**

In his Thirteenth Ground for Relief, Leonard claims admission of police reports into evidence violated his rights under the Confrontation Clause (Traverse, Doc. No. 17, PageID 443). The Ohio Supreme Court considered this claim on the merits and rejected it. *State v. Leonard, supra,* at ¶ 110, citing *California v. Green*, 399 U.S. 149 (1970). The Report recommends dismissing the claim with prejudice.

In objecting, Leonard substantially misstates the Ohio Supreme Court's ruling. He says, "[i]n applying a constitutional analysis, the Ohio Supreme Court held that the trial court erred when it admitted the police reports into evidence." (Objections, Doc. No. 53, PageID 1370-71.) The Ohio Supreme Court concluded its constitutional analysis in ¶ 110: "Thus, the trial court did not violate Leonard's constitutional right of confrontation." It then went on in ¶ 111 to hold that admission of the reports was a violation of Ohio R. Evid. 803(8)(b) because they were inadmissible hearsay. Thus the Ohio Supreme Court did not find constitutional error, but rather evidence law error. Our consideration is limited to whether the constitutional decision is entitled to AEDPA deference.

The Report noted that Leonard had not cited any Supreme Court precedent which the Ohio Supreme Court's decision contradicted or unreasonably applied. The Objections claim

*California v. Green* is not applicable because, instead of testifying at trial, Detective Schweinefus "essentially read from these reports when giving his testimony." (Objections, Doc. No. 53, PageID 1371.) That is Leonard's construction of the facts. These were Schweinefus' own reports and the Ohio Supreme Court found that his testimony "essentially mirrored the contents of his investigative reports." *State v. Leonard, supra,* at ¶ 110. But then "Leonard's counsel extensively and effectively cross-examined Schweinefus regarding the reports." *Id.* Leonard has not shown how what actually happened here was an unreasonable application of *Green, supra*.

It is therefore again respectfully recommended that Ground Thirteen be dismissed with prejudice.


**Ground Fourteen: Partial Read Back of Testimony**


In his Fourteenth Ground for Relief, Leonard claims he was denied his right to a fair trial when Judge Schweikert permitted the reading back to the jury of portions of the testimony of two witnesses instead of all of their testimony (Traverse, Doc. No. 17, PageID 449). The Ohio Supreme Court rejected this claim on the merits. *State v. Leonard, supra*, ¶¶ 122-23. The Report recommends dismissing this Ground for Relief with prejudice because Leonard cited no United States Supreme Court precedent to the contrary (Report, Doc. No. 47, PageID 1227).

The Objections still cite no contrary United States Supreme Court precedent. Thus no further analysis is necessary.


**Ground Fifteen: Change of Verdict Forms**

In his Fifteenth Ground for Relief, Leonard asserts his constitutional rights were violated when Judge Schweikert instructed the jurors to return a corrected verdict form (Traverse, Doc. No. 17, PageID 453). Leonard has now withdrawn his Fifteenth Ground for Relief (Objections, Doc. No. 53, PageID 1375). Since the withdrawal was not consented to by Respondent, the Court treats the withdrawal as a dismissal of this claim with prejudice. See Fed. R. Civ. P. 41.

**Ground Sixteen: Prosecutorial Misconduct**

In his Sixteenth Ground for Relief, Leonard asserts in three sub-claims that the prosecutor's "pervasive and flagrant misconduct" deprived him of a fair trial (Traverse, Doc. No. 17, PageID 457).

**Sub-claim A: Misconduct by Using Extrajudicial Subpoenas**

In Sub-claim A, Leonard asserts he was deprived of his constitutional right to a fair trial because the prosecutor used extrajudicial subpoenas to obtain pretrial statements from Penny McBride, the mother of Leonard's children, and Nick Chaplin, the Kentucky Deputy Sheriff to whom Leonard voluntarily surrendered, as well as hospital records of Ryan Gries, one of the victims (Traverse, Doc. No. 17, PageID 460).

This claim was first presented to the Ohio courts in Leonard's petition for post-conviction relief under Ohio Revised Code § 2953.21. The Hamilton County Court of Appeals denied the claim on the merits. *State v. Leonard*, 157 Ohio App. 3d 653, 660-61, ¶¶ 11-13 (1ª Dist. 2004).

The Report recommends dismissing this sub-claim because, although Ohio law does not presently authorize a prosecutor to use subpoenas in this way, there is nothing unconstitutional about such a use (Report, Doc. No. 47, PageID 1231).

Leonard objects "[t]he prosecutor's use of these improper subpoenas was a blatant disregard of Leonard's rights to due process" (Objections, Doc. No. 1379). However, Leonard again cites no United States Supreme Court precedent holding the use of investigative subpoenas such as these violates the Constitution. Sub-claim A is without merit.

**Sub-claim B:  Misconduct During Trial**

Leonard asserts in Sub-claim B that various acts of the prosecutor during trial constituted misconduct which deprived him of a fair trial (Traverse, Doc. No. 17, PageID 458). The Ohio Supreme Court rejected these claims on the merits, applying the relevant United States Supreme Court precedent. *Leonard,* , ¶¶ 155-178. The Report concluded this decision was entitled to deference under 28 U.S.C. § 2254(d)(1)(Report, Doc. No. 47, PageID 1237-41).

The Objections devote several pages to arguing this Sub-claim is not procedurally defaulted (Objections, Doc. No. 53, PageID 1380-82). However, the Report reached the merits and did not recommend any procedural default finding.

The Objections argue the misconduct at length and then state the Ohio Supreme Court erred in applying *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974), instead of the higher standard applicable to capital cases from *Caldwell v. Mississippi*, 472 U.S. 320, 340 (1985). On this argument, the Report noted

> Leonard complains that the Ohio Supreme Court did not apply the
> strict standard of Cald*well v. Mississippi,* 472 U.S. 320 (1985), to

the prosecutor's closing argument in this case. But the portion of the closing argument in that case to which five members of the Supreme Court took exception was a comment about automatic appellate review.

(Report, Doc. No. 47, PageID 1241.) In *Caldwell* the Supreme Court vacated a capital sentence because the prosecutor had told the jury any capital sentence would automatically be appealed, thus lessening their sense of responsibility for the verdict. To the extent, Leonard presents a *Caldwell*-like claim in this case, it is dealt with above in Ground Eight, Sub-claim B. But *Caldwell* never held there was a higher standard to be applied to asserted prosecutorial misconduct in capital cases. Instead, it noted that the trial judge in *Donnelly* had given a prompt corrective instruction and that the prosecutor's comment there was ambiguous and did not so prejudice a "specific right, such as the privilege against compulsory self-incrimination, as to amount to a denial of that right." *Caldwell*, 472 U.S. at 340, citing *Donnelly*, 416 U.S. at 643.

The Objections do not demonstrate error in the Report's recommendation to dismiss this sub-claim.


**Ground Seventeen:** *Brady* **Violation**


In his Seventeenth Ground for Relief, Leonard claims his constitutional rights were violated when the prosecutor withheld material exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). This claim was presented to the Ohio courts in post-conviction and denied. *State v. Leonard*, 157 Ohio App. 3d 653, 666-67, at ¶¶ 35-36 (1st Dist. 2004).

As the Report notes, Leonard makes the same argument in this Court that he made to the First District Court of Appeals, to wit, that the Hamilton County Prosecutor has violated *Brady*

in other cases, he must have done so in this case. Leonard pointed to no actual *Brady* material found post-trial. The Report concludes the claim is without merit, implicitly because the First District's decision was entitled to deference under § 2254(d)(1).

In his Objections Leonard points to a fresh example of *Brady* violation by the Hamilton County Prosecutor. In *Hill v. Mitchell*, 2013 U.S. Dist. LEXIS 45919 (S.D. Ohio, Mar. 29, 2013), Judge Sargus of this Court found a *Brady* violation by the Hamilton County Prosecutor's Office and granted habeas relief on that basis. Based on this further proof, Petitioner now "asks that the Hamilton County Prosecutor's Office be required to turn over all of its files and records in this case, or if the Office refuses, Leonard be granted habeas relief." (Objections, Doc. No. 53, PageID 1390). This sounds remarkably like a discovery demand.

On August 24, 2009, the Court entered a Scheduling Order which set a deadline of sixty days after the answer was filed to move for discovery (Doc. No. 10, PageID 182). That date was continued several times and Petitioner's Motion for Discovery was then filed April 22, 2010 (Doc. No. 18). In support of this Ground for Relief, Petitioner sought

> Any and all files maintained by the Hamilton County Prosecutor's Office and Hamilton County Sheriff's Office relating to the prosecution of Patrick Leonard and the investigation into the death of Dawn Flick, including any reports, witness statements, photographs, etc.;
>
> Any and all files maintained by the Hamilton County Coroner's Office relating to the autopsy of Dawn Flick and investigation into her death, including but not limited to reports, draft reports, test results, photographs, etc.; [and]
>
> Depositions of trial prosecutors Seth S. Tieger, Esq. and Jerome A. Kunkel, Esq. regarding office policies for the disclosure of material to defense counsel, and the disclosures and non-disclosures made in Leonard's case.

(Motion, Doc. No. 18, PageID 621.)

The Magistrate Judge denied the sought discovery, holding:

> The Court finds the allegations in the Traverse do not justify the discovery sought on this claim. Petitioner does not offer any reasonable suspicion that *Brady* material was withheld in this case or what it might be. There is no attempt to relate the particular kinds of *Brady* materials eventually discovered in the cited cases to material that might have been withheld here. There is no attempt to show that particular attorneys found to have withheld *Brady* material in any of the cited case was involved in this case, nor any citation to any practice or policy of the Hamilton County Prosecutor's Office which might have resulted in failure to disclose here. At most, Petitioner alleges that because *Brady* violations have been found in past cases involving that Office, in every future case the Office should be subject to broad discovery to ensure that they have not offended again. Compare the specificity of the allegations in *Bracy v. Gramley, supra*. Petitioner's Motion for Discovery as to his *Brady* claim is denied.

(Amended Order Granting in Part and Denying in Part Petitioner's Motion for Discovery, Doc. No. 25, PageID 670.) After Objections and a Supplemental Opinion, Chief Judge Dlott affirmed the denial on September 16, 2010 (Order, Doc. No. 32).

It is far too late in Objections to a Report on the merits to attempt to reopen discovery. In any event, if the Court ordered the production of documents and the Hamilton County Prosecutor refused, the proper remedy would be confinement of the refusing official in civil contempt until compliance. The habeas corpus statutes do not authorize substantive relief as a penalty for non-compliance with a discovery order.

Leonard has still presented no evidence of a *Brady* violation in this case. His Seventeenth Ground for Relief should therefore be denied.

**Ground Eighteen: Discriminatory Charging and Prosecution**

In his Eighteenth Ground for Relief, Leonard claims his constitutional rights to fair trial,

due process, and equal protection were denied by the existence of unregulated discretion of the Hamilton County prosecutor in deciding who will be charged with a capital crime (Traverse, Doc. No. 17, PageID 490). The Ohio Supreme Court rejected this claim on the merits. *Leonard, , ¶ 177.*

As the Report points out, "[p]rosecutorial discretion at the elected county prosecutor level is the general pattern for criminal prosecution in the United States." (Report, Doc. No. 47, PageID 1244.) The Supreme Court of the United States has never held this pattern of discretion to be unconstitutional. It is certainly true as the Objections point out that geographic disparity in capital prosecutions is argued to be a major flaw in Ohio's death penalty and the Joint Task Force Report of the Ohio Supreme Court and the Ohio State Bar Association[11] has recommended a statewide capital charging committee as a solution to this flaw. However wise this might be as a matter of policy, it is not mandated by the United States Constitution.

Ground Eighteen should be dismissed with prejudice.

**Ground Nineteen: Attorney Conflict of Interest**

In his Nineteenth Ground for Relief, Leonard claims he received ineffective assistance of trial counsel because his trial counsel was retained by his family, was a friend of the family, and represented Leonard's brothers in civil litigation which also involved Leonard, i.e., civil litigation by the survivors of Dawn Flick asserting corporate liability for her death. The First District Court of Appeals rejected this claim on the merits. *State v. Leonard*, 157 Ohio App. 3d 653, ¶¶ 25-34 (Ohio App. 1st Dist. 2004).

Although the Court had permitted depositions of trial attorneys William Welsh and

---

[11] Available online at the Ohio Supreme Court's website.

Michael Strong to be taken in support of this claim, the Report did not consider them, holding that to do so would violate the ruling in *Cullen v. Pinholster,* 563 U.S. ___, 131 S. Ct. 1388 (2011) (Report, Doc. No. 47, PageID 1248-49).

Leonard objects to this conclusion, arguing that

(1)     Leonard, unlike *Pinholster*, was diligent in attempting to develop the record in state court;

(2)     Leonard has already satisfied 28 U.S.C. § 2254(d)(1) by showing that "the state court decisions unreasonably applied clearly established federal law by refusing to grant Leonard factual development he requested in state court before adjudicating the merits of his claims";

(3)     "[E]vidence developed in federal court may always be considered to demonstrate, 'by clear and convincing evidence,' 28 U.S.C. § 2254(e)(1), that subsidiary state court factual findings are clearly erroneous." (Objections, Doc. No. 53, PageID 1319-20.)

Leonard does no more in the Objections than state these conclusions. He offers no post-*Pinholster* case law accepting his suggested interpretations of that case. He does not even attempt to show how he has satisfied § 2254(d)(1) on the basis of the state court record. He has not shown any constitutional entitlement to discovery in state post-conviction proceedings. And finally, he does not demonstrate how the Welsh or Strong deposition testimony undermines the state court factual findings. That testimony does little more than supplement what appears in the state court record. In sum, Leonard has not shown that *Pinholster* is inapplicable here.

On the merits of the conflict of interest claim, Leonard's claim is not persuasive in that he has not shown Strong failed to present anything from Leonard's childhood which would have been strongly mitigating and which he held back because of his long association with the family.

The argument that Patrick Leonard was a good person who did this one very bad thing was likely to be more persuasive to a jury – especially in light of Leonard's immediately turning himself in and confessing – than a long parade of childhood horribles.

Ground Nineteen should therefore be dismissed with prejudice.

**Ground Twenty:  Ineffective Assistance of Trial Counsel at the Guilt Phase**

The Report notes that the various sub-claims on this Ground for Relief were first argued to the state courts at various different points in the state court process and separates them for analysis by the stage at which they were first argued.

The Ohio Supreme Court disposed of a number of these sub-claims on the merits on direct appeal.  *State v. Leonard, supra,* ¶¶ 139-46.  The Report concluded that disposition was neither contrary to nor an unreasonable application of the relevant Supreme Court precedent, *Strickland v. Washington*, 466 U.S. 668 (1984)(Report, Doc. No. 47, PageID 1254-55).

Additional claims of ineffective assistance of trial counsel were raised on post-conviction.  Several of them were held procedurally defaulted under Ohio's criminal *res judicata* doctrine by failure to raise them on direct appeal.  *State v. Leonard*, 157 Ohio App. 3d 653, 661-62 at ¶ 17 (1st Dist 2004).  The Report concludes this finding satisfied the procedural default rules of *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (Report, Doc. No. 47, PageID 1257).  As to the remaining claims decided by the First District on the merits, the Report concludes that decision was not an objectively unreasonable application of *Strickland* (Report, Doc. No. 47, PageID 1259).

Finally, Leonard raised one of these claims as an omitted claim in his Application for

Reopening. Because the underlying claim was procedurally defaulted under the *res judicata* doctrine, the Report concluded it was not ineffective assistance of appellate counsel to fail to raise this claim on appeal (Report, Doc. No. 47, PageID 1259-60).

Instead of structuring his Objections to parallel the Report, Leonard has structured them as arguments about Sub-claims A, B, and C as first pleaded in the Petition. (Objections, Doc. No. 53, PageID 1403-14.) This structure will be followed here..

**Sub-claim A: Ineffective Assistance Pretrial**

Leonard's first assertion under this sub-claim is that Welsh and Strong, who were retained by Leonard's family to represent him, provided ineffective assistance *per se* because they were not qualified under Ohio Supreme Court Superintendence Rule 20 to represent indigent capital defendants. This claim was made and rejected on direct appeal; the Ohio Supreme Court declined to "impose a rule that creates a presumption of ineffective assistance of counsel where counsel has been retained by or for a defendant and is not qualified under C.P.Sup.R. 65."[12] *Leonard, supra*, ¶ 142, citing *State v. Keith*, 79 Ohio St. 3d 514 (1997). Leonard cites no United States Supreme Court precedent which makes it per se ineffective assistance to accept a capital defense on retainer when one has not met state standards for appointment to indigent cases.

Leonard faults the Report for not discussing his claim that Welsh and Strong violated their ethical duty in accepting the case because they were unprepared by education or experience to handle it competently (Objections, Doc. No. 53, PageID 1403). That assertion begs the question: it assumes because they had not taken the Rule 20 training that they were not in fact

---

[12] This is former instantiation of Superintendence Rule 20.

competent. But the Ohio Supreme Court, which imposes the Rule 20 requirement on counsel for indigent capital defendants, found these attorneys did perform competently.

Leonard next claims Welsh and Strong did not conduct an adequate investigation (Objections, Doc. No. 53, PageID 1403-05). His habeas counsel do not bother to cite to any place in the record where any Ohio court or this Court in the Report ruled on these claims, or indeed to any place where counsel raised them before. Instead, they give citations to three post-conviction exhibits without bothering to tell the Court where in the record *in this Court* to find them. *Id.* at PageID 1404-05.

**Sub-claim B: Ineffective Assistance in Voir Dire**

In Sub-claim B Leonard asserts he received ineffective assistance of trial counsel during voir dire because counsel told prospective jurors who were confused about what "mitigation" means to wait for the judge's instructions and did not adequately attempt to rehabilitate prospective jurors who generally opposed the death penalty (Traverse, Doc. No. 17, PageID 505; Objections, Doc. No. 53, PageID 1406).

The Report recommends dismissing this sub-claim as procedurally defaulted because it could have been raised on direct appeal but was not and the Ohio Supreme Court denial of reopening for ineffective assistance of appellate counsel was entitled to deference under § 2254(d)(1)(Report, Doc. No. 47, PageID 1260).

Leonard objects to giving AEDPA deference because, he asserts, the use of ineffective assistance of appellate counsel as cause to excuse a default is "less-exacting" than for ineffective assistance of appellate counsel on the merits (Objections, Doc. No. 53, PageID 1406-07). As

noted above in the analysis of Ground Eight, Sub-claim A, this notion is difficult to reconcile with *Harrington v. Richter,* 562 U.S. ___, 131 S.Ct. 770, 785 (2011). Whether review is with AEDPA deference or *de novo*, Leonard points to no case law suggesting that a trial attorney's deference to a judge's instruction on the meaning of mitigation is such obvious trial attorney error that failure to complain about it on direct appeal is ineffective assistance of appellate counsel.

Leonard cites to *Hodgson v. Colson*, 711 F.3d 589 (6th Cir. 2013). There the Sixth Circuit denied habeas relief on a claim that the trial judge unduly restricted voir dire. The Court distinguished between constitutionally compelled voir dire questions and a hypothetical which went beyond that. It contains no proposition about ineffective assistance of trial counsel for failing to ask certain questions.

Leonard also claims his trial attorneys' failure to attempt to rehabilitate prospective jurors who were generally opposed to the death penalty was ineffective assistance of trial counsel. Absolutely no showing is made that prospective jurors Glover and Allen could have been rehabilitated.

Leonard also claims his trial attorneys were ineffective for failure to discuss during voir dire possible evidence on "experimental sex, including handcuffs and binding, dysfunctional sexual relationships, infidelity, and the age difference between Leonard and Flick." (Objections, Doc. No. 53, PageID 1408.) The Report found this claim was procedurally defaulted because the Ohio Court of Appeals had applied Ohio's *res judicata* doctrine. (Report, Doc. No. 47, PageID 1257.) Leonard objects that this kind of claim can best be proved by evidence outside the record and so should not have been found barred by *res judicata* (Objections, Doc. No. 53, PageID 1409). However, Leonard cites no such evidence which was in fact presented to the Ohio courts

in post-conviction. He relies instead on general propositions from *Trevino v. Thaler*, ___ U.S. ___, 133 S. Ct. 1911, 185 L. Ed. 2d 1044 (2013), and *Taylor v. Maddox*, 366 F.3d 992 (9th Cir. 2004), that ineffective assistance of trial counsel claims often depend on evidence outside the record. The question here is what evidence *dehors* the record was offered as opposed to those general propositions about other cases.

Sub-claim B should be dismissed as procedurally defaulted.

**Sub-claim C**

In Sub-claim C, Leonard presents claims of ineffective assistance of trial counsel at the trial stage.

**Sub-claim C(1): Failure to raise a speedy trial claim.**

Leonard asserts it was ineffective assistance of trial counsel to allow the trial to go forward beyond the ninety-day statutory time limit in Ohio law (Objections, Doc. No. 53, PageID 1411). This claim was raised in post-conviction and dismissed by the court of appeals as barred by *res judicata* because it could have been raised on direct appeal. *State v. Leonard*, 157 Ohio App. 3d 653, 661-62 at ¶ 17 (1st Dist. 2004). The Report found that ruling well taken under *Maupin*, *supra*. (Report, Doc. No. 47, PageID 1257.) Leonard now objects that this would have been a question better treated in post-conviction because of evidence *dehors* the record, but cites absolutely no such evidence.

**Sub-claim C(2):  Failure to Properly Cross-Examine**

Leonard also claims his trial counsel failed to properly impeach several witnesses with prior inconsistent statements.  The Ohio Supreme Court considered and rejected this claim on direct appeal.  *Leonard*, 2004-Ohio-6235 at  ¶ 146.  The Report recommends giving this conclusion AEDPA deference (Report, Doc. No. 47, PageID 1255).  Leonard's Objections do not deal with this recommendation directly, but instead argue the merits of the omitted cross-examination (Objections, Doc. No. 53, PageID 1411-12).  In particular, the Objections do not meet the Ohio Supreme Court's point that the extent of cross-examination is within the scope of trial strategy.  *Leonard,* 2004-Ohio-6235 at  ¶ 146.

**Sub-claim C(3):  Calling Damaging Witnesses**

Leonard argues there was no good reason to call his brother Ted or Rick Schoeny to the stand (Objections, Doc. No. 53, PageID 1412-13).  This claim was also raised on direct appeal and rejected by the Ohio Supreme Court, which stated a reasonable rationale for eliciting the testimony each witness gave.  *Leonard,* 2004-Ohio-6235 at  ¶¶ 143-44.  The Report recommends giving this conclusion AEDPA deference (Report, Doc. No. 47, PageID 1255).  The Objections argue this matter *de novo*, without any attempted showing of how the Ohio Supreme Court's decision is an unreasonable application of *Strickland*.

**Sub-claim C(4):  Failure to Call Jeanne Hutcherson**

This claim was first presented in post-conviction and rejected summarily by the First District Court of Appeals. *State v. Leonard*, 157 Ohio App. 3d 653, ¶ 18 (2004). The Report recommends rejecting this claim on the ground it was very unlikely the proposed testimony from Hutcherson would have made a difference:

> [P]roposed testimony by Leonard's sister Jeanne Hutcherson that, while she had never seen Leonard hit Frick, she had seen Frick hit Leonard and she had seen Frick kissing Gries at a party after Leonard left, both on undated occasions sometime during the ten-year relationship [of Flick and Leonard] is hardly the stuff of which successful defenses to confessed murder are made.

(Doc. No. 47, PageID 1258.) The Objections merely reiterate a summary of Hutcherson's proposed testimony and do not show how it would have probably made a difference in the outcome (Objections, Doc. No. 53, PageID 1413).

**Sub-claim C(5) Failure to Object to Duplicitous Indictment**

This sub-claim as argued in the Objections is devoid of any citation to any place in the record where this claim was made before the Objections were filed. As such, it is scarcely persuasive.

It is therefore again respectfully recommended that the Twentieth Ground for Relief be dismissed with prejudice in its entirety.

**Ground Twenty-One: Ineffective Assistance of Counsel at the Penalty Phase**

This Ground for Relief was presented in three sub-claims:

**Sub-claim 1 – Failure to Conduct a Reasonable Mitigation Investigation**

Leonard claims his trial counsel were ineffective for choosing a mitigation strategy without thoroughly investigating other possible strategies (Traverse, Doc. No. 17, PageID 532). This claim was presented in post-conviction and rejected by the First District. *State v. Leonard*, 157 Ohio App. 3d 653,662-64, ¶¶ 20-24 (2004). The Report recommends this conclusion be given AEDPA deference (Report, Doc. No. 47, PageID 1265). The Objections essentially argue this claim *de novo*. Whether habeas counsels' alternative mitigation theory -- Leonard's character had been badly shaped by his upbringing, leading him to be sexually promiscuous and eventually killing one of his long-term partners – would have been more persuasive to a Cincinnati, Ohio, jury is purely speculative.

**Sub-claim 2 – Presentation of "incomplete, damaging, and misleading information through a psychiatrist."**

Leonard claims his trial counsel provided ineffective assistance in presenting the testimony of Dr. James Hawkins, a psychiatrist, in the penalty phase. (Traverse at PageID 536). This claim was also presented in post-conviction and rejected by the First District. .*State v. Leonard*, 157 Ohio App. 3d 653, 663-64, at ¶¶ 21-24 (2004). The Report describes the competing expert testimony and implicitly recommends deferring to the First District (Doc. No.

47, PageID 1265-66). The Magistrate Judge now makes that recommendation explicit. The Objections do not show that Leonard presented so convincing a case in post-conviction on this sub-claim that it was unreasonable to reject the claim.

**Sub-claim 3 – Making erroneous and misleading statements about the law.**

Leonard claims his trial attorneys made erroneous and misleading statements about the law in closing argument. (Traverse, Doc. No. 17, at PageID 539.) The Ohio Supreme Court considered and rejected this claim on direct appeal, holding any errors were corrected by the trial court's instructions. *Leonard, 2004-Ohio-6235 at* ¶ 151. The Report recommends AEDPA deference (Report, Doc. No. 47, PageID 1267). The Objections review this claim *de novo* without dealing directly with the Ohio Supreme Court's conclusion or with the question whether it was an objectively unreasonable application of the prejudice prong of *Strickland*. The Objections are thus unpersuasive.

Ground for Relief Twenty-one should be dismissed with prejudice.

**Ground Twenty-Two: Ineffective Assistance of Appellate Counsel on Direct Appeal**

In his Twenty-Second Ground for Relief, Leonard asserts he received ineffective assistance of appellate counsel (Traverse, Doc. No. 17, PageID 557; Final Brief, Doc. No. 39, PageID 999-1011). This claim was presented to the Ohio Supreme Court in an Application for Reopening the Direct Appeal, which that court summarily rejected. The Report recommends giving AEDPA deference to that decision (Report, Doc. No. 47, PageID 1268).

In arguing this Ground for Relief, Leonard relied on depositions of his appellate counsel

taken in discovery in this Court. By the time of the Report, the Supreme Court had decided *Cullen v. Pinholster,* 563 U.S. ___, 131 S. Ct. 1388 (2011), and the Magistrate Judge determined that *Pinholster* precluded consideration of the depositions. Leonard objects that "the Ohio Supreme Court did not provide Leonard an opportunity to develop facts" and therefore *Pinholster* does not apply (Objections, Doc. No. 53, PageID 1428). The Report notes Ohio Sup. Ct. R. 11.6(H) which provides for an evidentiary hearing if the Supreme Court determines one is necessary. Leonard counters by citing Ohio R. App. P. 26(B)(8), but that rule applies on to cases in the Ohio intermediate courts of appeal. See Ohio R. App. P. 1.

Ground for Relief Twenty-Two is without merit for the reasons given in the Report.


**Ground Twenty-Three: System of Inadequate Appellate and Proportionality Review**


In his Twenty-Third Ground for Relief, Leonard contends Ohio's death penalty system fails to provide constitutionally adequate appellate and proportionality review (Traverse, Doc. No. 17, PageID 563). The Report recommends dismissing this claim as procedurally defaulted because it was not fairly presented to the Ohio courts. Instead, Leonard argued in his nineteenth Proposition of Law on direct appeal that his own death sentence was "excessive and disproportionate to sentences in similar cases" (Appellant's Brief, Apx. Vol. 4, p. 164).

Leonard objects that he is really arguing the same claim here as he argued in the Ohio Supreme Court, to wit, that his sentence was disproportionate under the Eighth Amendment. . . ." (Objections, Doc. No. 53, PageID 1430.) Leonard provides a lengthy argument that the Ohio Supreme Court has failed and refused to follow the proportionality review process mandated by the Ohio General Assembly in Ohio Revised Code § 2929.05(A) (Objections, Doc. No. 53,

PageID 1430-34.)  As noted in the Report, this Court is bound by the Ohio Supreme Court's interpretation of Ohio law.  (Report, Doc. No. 47, PageID 1271-72.)  The Twenty-Third Ground for Relief should therefore be dismissed.


**Ground Twenty-Four:  Conviction Upon Insufficient Evidence and Against the Manifest Weight of the Evidence**

In his Twenty-Fourth Ground for Relief, Leonard asserts his conviction for aggravated murder was entered upon insufficient evidence and is against the manifest weight of the evidence.  He presented this claim to the Ohio Supreme Court as his Sixth Proposition of Law on direct appeal and the court rejected it.  *Leonard*, 2004-Ohio-6235 at  ¶¶ 76-83.

The Report notes that the manifest weight claim does not state a federal constitutional claim on which habeas relief can be granted and Leonard does not object to that conclusion. Leonard argues the insufficient evidence claim as if this Court's review were *de novo*, but the Report notes that on such claims, habeas courts are to give double deference, first to the jury's verdict and then to its assessment by the state appellate courts (Report, Doc. No. 47, PageID 1277-78, citing  *Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009), and *Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062, (2012)(*per curiam*)).  The Twenty-Fourth Ground for Relief should therefore be dismissed with prejudice.


**Ground Twenty-Five:  Racial Discrimination in Jury Selection**


In his Twenty-Fifth Ground for Relief, Leonard argues he was denied a fair trial and deprived of equal protection of the laws by racial discrimination in jury selection (Traverse, Doc.

No. 17, PageID 579).   Leonard has now withdrawn his Twenty-Fifth Ground for Relief (Objections, Doc. No. 53, PageID 1436).   Since the withdrawal was not consented to by Respondent, the Court treats the withdrawal as a dismissal of this claim with prejudice.  See Fed. R. Civ. P. 41.


**Ground Twenty-Six:  Inadequate State Post-Conviction Procedures**


In his Twenty-Sixth Ground for Relief, Leonard asserts that his conviction and sentence must be set aside because Ohio's post-conviction process is constitutionally inadequate (Traverse, Doc. No. 17, PageID 589).  The court of appeals rejected this claim on appeal in post-conviction because it held a § 2953.21 petition was not the proper place to raise such a claim and the claim was, in any event, without merit.  *State v. Leonard*, 157 Ohio App. 3d 653, 667 at ¶ 38 (1st Dist. 2004).  The Report recommended dismissing this claim as non-cognizable in habeas (Doc. No. 47, PageID 1282).

The Objections note (Doc. No. 53, PageID 1437-38) that the Report does not discuss *Martinez v. Ryan*, 566 U.S. ___, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012), or *Trevino v. Thaler*, ___ U.S. ___, 133 S. Ct. 1911, 185 L. Ed. 2d 1044 (2013).  In *Martinez*, the Supreme Court held:

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one,

> which is to say that the prisoner must demonstrate that the claim
> has some merit. Cf. *Miller-El v. Cockrell*, 537 U. S. 322, 123 S. Ct.
> 1029, 154 L. Ed. 2d 931 (2003) (describing standards for
> certificates of appealability to issue).

132 S. Ct. at 1318-1319. *Trevino*, by a narrower vote, extended *Martinez* to the Texas system. Neither case recognized a constitutional right to post-conviction process of any particular dimensions or even a constitutional right to the effective assistance of counsel in such proceedings. Therefore they do not require a modification of the Report.

## Ground Twenty-Seven:  Ohio's Unconstitutional Death Penalty Scheme

In his Twenty-Seventh Ground for Relief, Leonard contends Ohio's death penalty scheme is unconstitutional (Traverse, Doc. No. 17, PageID 595).  The Report recommends dismissing this claim because the United States Supreme Court has never held that the death penalty violates clearly established law and Leonard had cited no precedent to the contrary.

In his Objections, Leonard cites comments against the death penalty by Justice Stevens and Judge Boyce Martin of the Sixth Circuit (Objections, Doc. No. 53, PageID 1440).  To those could be added the positions of former Supreme Court Justices Brennan, Marshall, and Blackmun and the present position of Ohio Supreme Court Justice Paul Pfeiffer.  However, that position does not rely on any clearly established law from the Supreme Court of the United States.

## Ground Twenty-Eight:  [No objections made to dismissal.]

## Ground Twenty-Nine:  Previously Withdrawn.

**Ground Thirty:  Cumulative Error**


In his Thirtieth Ground for Relief, Leonard claims the cumulative effects of errors and omissions in the preceding claims deprived him of a fair trial and sentencing determination (Traverse, Doc. No. 17, PageID 610).  The Report recommends denying this claim on the basis of recent Sixth Circuit precedent (Report, Doc. No. 47, PageID 1285, citing *Sheppard v. Bagley*, 657 F.3d 338 (6th Cir. 2011), and *Moreland v. Bradshaw*, 699 F. 3d 908 (6th Cir. 2012)).

Leonard concedes this precedent is current law, but requests a certificate of appealability because he asserts reasonable jurists could disagree (Objections, Doc. No. 53, PageID 1441). However, he cites to no reasonable jurists who have disagreed nor does he make any argument about how any disagreement would be reasonable.


**Conclusion**


Upon recommittal and reconsideration, the Magistrate Judge adheres to his prior recommendation:  "[b]ased on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice.  Leonard should, however, be granted a certificate of appealability on Grounds for Relief One, Sixteen, and Twenty-Four."  (Report, Doc. No. 47, PageID 1286.)


May 28, 2014.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).